**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_________________

**Brian Kolfage and Ashley Kolfage**, husband and wife,

Plaintiffs,

vs.

**Louis Anthony Caponecchia**, et al.,

Defendants.

**No. CV 14-1638-PHX-HRH**

Phoenix, Arizona
February 9, 2015
6:09 p.m.

**BEFORE: THE HONORABLE DAVID K. DUNCAN, MAGISTRATE JUDGE**

**TRANSCRIPT OF PROCEEDINGS**

**(*Settlement Conference*)**

Transcriptionist:
Laurie A. Adams
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC-43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

APPEARANCES:

For the Plaintiffs:
ROSE LAW GROUP PC
By: **Logan V. Elia, Esq.**
7144 E. Stetson Drive
Suite 300
Scottsdale, AZ 85251

For the Defendant Vanderzanden:
BROENING OBERG WOODS & WILSON PC
By: **William R. Phillips, Esq.**
PO Box 20527
Phoenix, AZ 85036-0527

**David Cook**
Client Representative for and with Defendant **Kenneth Vanderzanden**

**Nathaniel Downes**
PRO SE DEFENDANT

**John Prager**
PRO SE DEFENDANT

**Paul Loebe**
PRO SE DEFENDANT

**Justine Grant**
PRO SE DEFENDANT

P R O C E E D I N G S

THE MAGISTRATE CLERK: Civil Case Number 14-1638, Kolfage, et al., versus Caponecchia, et al., on for settlement conference.

THE COURT: So what I will ask now is for the counsel who are here to introduce themselves and also introduce their clients, and those who are not represented by counsel to announce who they are so that we have a record of who is in attendance. 14:20:43

And I will go ahead and start off, a little bit contrary to what I just said, with respect to you, Mr. Vanderzanden, and that is we know that we have you on the telephone, on the cell phone, that is just here on the bench and I believe that you are still there. Is that correct, sir? 14:20:59

MR. VANDERZANDEN: Yes, sir. 14:21:18

THE COURT: Now I will turn to plaintiffs' counsel.

MR. ELIA: Logan Elia for Brian Kolfage, who is present here to my left.

THE COURT: Thank you very much.

MR. PHILLIPS: Bill Phillips here representing Ken Vanderzanden. 14:21:29

THE COURT: Thank you.

MR. DOWNES: Nathaniel Downes representing myself.

THE COURT: Thank you.

MR. PRAGER: John Prager, self-represented. 14:21:41

THE COURT: Thank you. And we also have Mr. Phillips here. Is that correct, sir?

MR. COOK: We have David Cook here, who is a representative of Mr. Vanderzanden's insurer.

THE COURT: I'm sorry, Mr. Cook. I got confused. 14:21:55

So the reason that we are on the record following what is an informal gathering, and that is a mediation, a settlement conference, where we were off the record and where we had discussions that were with the hope of being able to resolve the case if a settlement was in the parties' respective 14:22:15 interests.

And during those discussions, we did reach an agreement that I think will lead to the settlement of the case against five of the defendants. Two -- I'm sorry? Oh. I neglected to turn to -- I apologize -- Mr. Loebe and Ms. Grant, 14:22:39 I failed to give you a chance to announce. I hope you are still there on the phone.

MR. LOEBE: Yes, sir. Paul Loebe, pro se.

THE COURT: Thank you. And Ms. Grant, you are there as well? 14:22:55

MS. GRANT: Yes. Justine Grant, pro se.

THE COURT: Thank you very much. I apologize.

So the purpose here is to set forth what we understand the essential terms to be against the defendants and the plaintiff who are going to settle. The reason for that is 14:23:13

under the rules of the court, and this is why your lawyer is speaking for you enough -- isn't enough, Mr. Vanderzanden, is that the rules of the court require that a settlement agreement be in writing, signed by the parties or placed on the record in open court. And so although this settlement may well involve a perfection of the agreement that's reached today in a written settlement agreement, the essential terms of that settlement agreement can be set forth on the record. And we will have a binding settlement with respect to those essential terms if we accomplish the assent of the parties to that settlement agreement.

14:23:31

14:23:53

And so let me tell you how I will proceed. What I will do first is I will announce that we do not have a settlement with the Remington defendants or with the Caponecchia defendants. But with respect to the other five defendants, there is a general agreement that will result, I believe, in a settlement of the case. And I will announce what I understand those essential terms to be, and then once I'm done, I will turn to the respective counsel for those who are represented by counsel to correct anything that I said that needed to be corrected. Then I will turn also to each of the individuals and who are not represented by counsel and ask them whether there's anything that needs to be corrected.

14:25:21

14:25:43

Once we have come to a common understanding that's placed on the record about what the essential terms of the

14:26:00

settlement are, I will turn to each of the parties and ask them whether they understand those essential terms and whether they agree to be bound by them.

So the settlement that is hoped to be accomplished with the five is that we will reach a complete piece of the lawsuit that is presently pending here in the District of Arizona, and that is the lawsuit in which the claims have been brought against these defendants and that the parties will agree that this lawsuit will end with respect to those defendants and that any claims will be dismissed and that any claim that could have been brought in the lawsuit will also be given up as part of the settlement. And that each side will pay its own costs and fees.

As part of the settlement there are general terms that go across all five of the defendants, but two of the defendants have some additional terms that I will specifically articulate. But the general terms, as I understand them to be applicable to all of the five defendants, but subject to the caveats that will be specified with respect to the two that have differences, are that the parties agree that they won't disparage one another going forward in the future and that they won't take action through third parties to disparage one another. And that to the extent that they have the power to affect, they will, in good faith, attempt to remove anything that is disparaging that's within their control that is

publicly posted that is the disparaging material.

Now, with respect to the two individuals that have additional terms, Mr. Loebe and the plaintiff have discussed also an additional signed document with respect to certain statements that were made with respect to a third party not in the case. And I can't remember her name, so I will have to turn to counsel to be reminded again. It begins with a V. 14:27:58

UNIDENTIFIED SPEAKER: Jan Virtros (phonetic).

THE COURT: Jan Virtros (phonetic). And that they have -- that Mr. Kolfage -- and is it Kolfage? It's a soft G, is that right? 14:28:16

MR. KOLFAGE: "Kolfage."

THE COURT: Okay. I have heard it a couple different ways. Sorry.

So Mr. Kolfage and Mr. Loebe have discussed on the phone and think that they have a meeting of the minds over the general content of this statement, but they want to see it in hard writing before they come to an absolute agreement of a settlement. But they are hopeful that they will be able to reach a written agreement of this meeting of the minds that has occurred. 14:28:26 14:28:44

And with respect -- and Mr. Prager, I have heard your name said a couple of ways too.

MR. PRAGER: "Prager."

THE COURT: "Prager," is that right? 14:28:57

MR. PRAGER: Yes.

THE COURT: So Mr. Prager, what you have agreed to with Mr. Kolfage is to the following terms, and that is that you agree not to say anything, one about the other, for the next year. So you won't have any communication one or the other -- about one or the other in the next year. And that after the end of that year, if Mr. Kolfage runs for office or if he publishes something that Mr. Prager wishes to rebut, he may rebut the material that was in the published source and that they both agree also that if they are asked by anyone, the only comment they would make with respect to the resolution of this lawsuit is that it was equitably settled.

Those are what I understand the essential terms to be. So I will start the first step of this process to see what needs to be modified by turning to Mr. Elia and ask you, sir, any additional comments?

MR. ELIA: The only additional comment that I have, Your Honor, is in regards to our settlement with Mr. Loebe and the statement about Jan Virtros (phonetic), we discussed in some detail what the key points of that statement would be. And as I understand it, the real key point is that my client will say that he published Jan's public information on his public Facebook page and that he regrets anything that was later done to Jan as a result of that.

THE COURT: Mr. Loebe, anything you want to say on

14:30:40 14:31:08 14:31:30 14:32:28 14:32:52

that point?

MR. LOEBE: Yes. That sounds about right. He published her information on his Facebook page and encouraged his friends to take action.

THE COURT: It was hard for me to hear what you said. But is it fair to say that you are in general agreement about this? 14:33:12

MR. LOEBE: Yes, in general agreement.

THE COURT: Okay. All right. And then with respect to Mr. Vanderzanden, is there anything that you would like to raise? 14:33:27

MR. PHILLIPS: Thanks, Judge. Number one, I wanted to be clear that if Mr. Vanderzanden is to be called as a witness by any of the remaining parties to this lawsuit, or called as a witness in any proceeding that pursuant to a court order he testify truthfully. 14:33:49

THE COURT: Well, everybody should understand that there is no private agreement that I'm aware of that can exist in the United States that would bar a person who is a competent witness to responding to a court subpoena. So I think that your point is well taken and perhaps is not harmful to reiterate but is certainly consistent with what the law is. 14:34:05

MR. PHILLIPS: I understand.

Judge, also, you mentioned something that Mr. Vanderzanden and I did not discuss during the day, and that is 14:34:23

removing things that have been communicated on the internet. And I want my client to understand that that is something that you and I did not discuss specifically with regard to Mr. Vanderzanden. You know, to the extent that Mr. Vanderzanden is expected to make some kind of good faith -- good faith effort to remove some communication that he has put out on the internet, I think that he would be willing to do that. But this remark is primarily for his benefit, because when you were describing these terms that's something that he and I did not discuss. 14:34:50 14:35:08

THE COURT: Mr. Vanderzanden, did you hear what your lawyer just said?

MR. VANDERZANDEN: I think so.

THE COURT: What he essentially said is he wanted to make sure that you understood that the point that I made that was part of the settlement that people would agree to, in good faith, take what efforts they could to remove any disparaging material that they had previously posted that they would do so, understanding that that is a difficult thing to do in the world of the internet where often times things are posted to places that you don't have any control once it's out the door. 14:35:16 14:35:35

MR. VANDERZANDEN: I understand and agree.

THE COURT: Okay. All right. And then I guess we should turn to you, Mr. Prager. Anything you want to say that I said that was wrong? 14:35:57

MR. PRAGER: No. There are things that we discussed that I can't remove.

THE COURT: Right. I understand that.

MR. PRAGER: I don't post about Brian.

THE COURT: Mr. Downes, anything -- 14:36:06

MR. PRAGER: If I run across anything I will remove it.

THE COURT: Mr. Downes.

MR. DOWNES: I see no problem with this at all.

THE COURT: Okay. Now, turning to the people or the 14:36:15 one person on the telephone I have not addressed yet, Ms. Grant.

MS. GRANT: Yes.

THE COURT: Anything that you said that -- anything that I said that you would like to correct? 14:36:26

MS. GRANT: No.

THE COURT: Now, turning back, then, to each of the individual parties, Mr. Kolfage, your spouse is a plaintiff in this lawsuit as well. Is that correct?

MR. KOLFAGE: Yes. 14:36:40

THE COURT: Is there any reason to think that she is not agreeable to this?

MR. KOLFAGE: No. She's agreeable.

THE COURT: And do you understand the essential terms?

MR. KOLFAGE: Yes, I do. 14:36:49

THE COURT: And do you agree to be bound by them?

MR. KOLFAGE: Yes.

THE COURT: And Mr. Vanderzanden, I'm going to hold the phone up closer to the microphone and ask you whether you understand the essential terms. 14:37:00

MR. VANDERZANDEN: I do.

THE COURT: And do you agree to be bound by them?

MR. VANDERZANDEN: Yes, I do.

THE COURT: All right. Now, Mr. Downes, do you understand the essential terms? 14:37:08

MR. DOWNES: Yes, I do.

THE COURT: And do you agree to be bound by them?

MR. DOWNES: Yes indeed.

THE COURT: Mr. Prager, do you understand the essential terms? 14:37:17

MR. PRAGER: Yes, I do.

THE COURT: And do you agree to be bound by them?

MR. PRAGER: Absolutely.

THE WITNESS: And Ms. Grant, do you understand the essential terms? 14:37:23

MS. GRANT: Yes, sir.

THE COURT: And do you agree to be bound by them?

MS. GRANT: Yes, sir, I do.

THE COURT: Now, I don't believe I omitted anybody, but if anybody here thinks I did let me know. 14:37:31

Okay. The next thing that we need to do, having now reached a n enforceable settlement with respect to these essential terms, subject, of course, to Mr. Loebe working out the point with Mr. Kolfage on the written provision, we need to set a timetable so that you all know by when you need to get certain things done. The reason for the timetable is it makes sure things do get done. 14:37:50

So what I contemplate is that there are really two deadlines you that need to think about, and that is, if you are going to have a written agreement, a deadline by which you will execute that written agreement so that everybody is comfortable, making sure they can stipulate to dismissal with prejudice of the lawsuit with respect to the dismissed defendants, each side to bear its own costs and fees. And then we would be able to conclude this matter. 14:38:04 14:38:23

So I will turn to plaintiffs' counsel to ask whether you have an initial idea about how much time we should set with respect to what is necessary for you to get to any written agreement.

MR. ELIA: Two weeks. 14:38:39

THE COURT: All right. And then if we set a deadline of three weeks from today for the date by which the stipulation for dismissal with prejudice, each side to bear its own costs and fees, would be filed, do you think that would work for the plaintiffs? 14:38:55

MR. ELIA: Yes.

THE COURT: Is there any defendant for whom that would not work?

I hear no objections, so I will assume that to be an assent from everybody that two weeks from today will be the deadline for the execution of any written agreement, and three weeks from today will be the deadline to file the stipulation to dismiss with prejudice against the settling defendants. 14:39:02

Is there anything else we need to address now?

MR. ELIA: There's one remaining issue, I guess, Your Honor. Mr. Loebe has filed a Motion for Summary Judgment. And to the extent that we have something to work out remaining with him, I don't see it being a big deal, but can we stipulate that in the event that the settlement fails with regard to Mr. Loebe, that the time during which we're negotiating that settlement does not count towards the response time in the motion? 14:39:21 14:39:46

THE COURT: Well, because I'm not Judge Holland, I can't change that deadline. But what I can do is -- this motion that Mr. Loebe filed was recently filed? 14:40:01

MR. ELIA: Yes.

THE COURT: So you have 30 days from that recent date to get the response in. If you find that in the next two weeks that you are not able to execute this final settlement, I can at least do -- you won't be completely barred from getting in a 14:40:14

timely response if things do fall apart, but if you ask Judge Holland for additional time, I will tell you that I will communicate with him in a minute entry from my court saying that I would tell Judge Holland that it would be helpful if he would give you the two weeks additional time to respond that you lost by way of making good faith efforts to try to settle the case. Again, I can't promise what Judge Holland will do, but I can make that representation to him if that will address that concern.

14:40:34

MR. ELIA: Will Mr. Loebe agree not to oppose that, if we request that additional time?

14:40:49

THE COURT: Well, let me ask Mr. Loebe. Do you understand what the question is, sir?

MR. LOEBE: I do understand the question. I do not oppose that.

14:41:10

THE COURT: I thought I heard you say you do not oppose. Is that correct?

MR. LOEBE: That is correct.

THE COURT: Okay. Thank you very much. Thanks for working that out.

14:41:17

Anything else from anybody else?

All right. Thank you all. I appreciate your time here today. I appreciate also in particular the staff of the court, the clerk of the court and also my judicial assistant staying late. Unfortunately, all of these people are dedicated

14:41:28

public servants who work overtime way too often and so I feel really personally responsible where I ask them to do it. And so I'm sorry. But I thank you all individually for your time as well and for working toward this.

I will say to the plaintiffs, just the last point, if it turns out at some point that you think I can be of further use with respect to the non-settling defendants, feel free to give me a call. Ex parte communications are certainly perfectly fine in the settlement context.

14:41:44

All right. Thank you all very much. And thank you for letting me borrow your phone. And Mr. Vanderzanden, thank you for agreeing to stand by with this while we worked through this process.

14:42:09

Thank you all.

(Proceeding concluded at 6:27 p.m.)

14:42:23

C E R T I F I C A T E

I, LAURIE A. ADAMS, court-approved transcriber, certify that the foregoing is a correct transcript from the official sound recording of the proceedings in the above-entitled matter.

DATED at Phoenix, Arizona, this 11th day of March, 2015.

s/Laurie A. Adams
___________________________________
Laurie A. Adams